UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEVIN M. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:17-cv-00984-RLY-TAB |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**
**ON PLAINTIFF'S BRIEF IN SUPPORT OF COMPLAINT**

## I. Introduction

Plaintiff Devin Jones seeks remand or reversal of the Administrative Law Judge's decision denying him supplemental security income benefits. As a minor, Jones had been considered disabled. However, after he turned 18, the Social Security Administration determined he did not meet the adult standard for disability. Jones challenges the ALJ's decision based on two arguments. First, Jones argues the ALJ erred as a matter of law in his credibility determination by failing to list and directly apply particular factors set forth in Social Security Ruling 96-7p. Second, Jones argues the ALJ made "erroneous and unsubstantiated statements regarding Jones' abilities and functionality," such that the credibility determination is not supported by substantial evidence. [Filing No. 12, at ECF p. 19.] Jones's request for relief [Filing No. 12] should be denied because the ALJ adequately discussed and supported his credibility determination with evidence from the record.

## II. Background

While in high school, Jones moved out of his mother's house following an incident in which he allegedly punched holes in her wall while arguing with her. Since then, Jones has lived with his girlfriend and her parents. Jones did not finish high school or get a GED. Apart from helping (unpaid) at his girlfriend's parents' fish store and horse farm, Jones has no work history.

The ALJ concluded that Jones was no longer disabled as of December 1, 2012, because his residual functional capacity allowed him to work. As a minor, Jones had been considered disabled and received supplemental security income. However, in the months after his 18th birthday, the Social Security Administration determined Jones did not meet the adult standards for disability. Jones disagreed with this conclusion and requested a review hearing. At the hearing, the ALJ found Jones had severe mental impairments: bipolar disorder, intermittent explosive disorder, social phobia, and borderline intellectual functioning. The ALJ concluded, however, that these impairments did not prevent Jones from working.

At step two, the ALJ found that Jones's impairments did not meet or medically equal listings 12.02, 12.04, 12.06, and 12.08 because Jones did not satisfy either the B or C criteria. The ALJ found Jones did not satisfy the paragraph B criteria because his impairments did not cause two "marked limitations" or one "marked limitation" with repeated episodes of decompensation of extended duration. Similarly, the ALJ found Jones did not satisfy the paragraph C criteria because he did not have "repeated episodes of psychiatric decompensation" or "extended inability to function outside a highly supportive living arrangement," and Jones was capable of functioning outside his home. [Filing No. 8-2, ECF p. 25, R. at 24.]

The ALJ found that Jones's RFC was limited to "simple, repetitive tasks requiring minimal independent judgment regarding primary work processes; static and predictable work

goals from day to day; no production rate pace; occasional, superficial contact with coworkers, supervisors and the general public; [and] no in-tandem work with coworkers." [Filing No. 8-2, at ECF p. 26, R. at 25.] In reaching this conclusion, the ALJ found that Jones's asserted symptoms did not affect Jones's ability to work to the extent Jones and Lenora Fields (Jones's girlfriend's mother) maintain. In light of his age, work experience, education, RFC, the Medical-Vocational Guidelines, and the vocational expert's testimony, the ALJ found Jones would be able to work jobs such as a landscape laborer, janitor, or dishwasher.

Jones argues his subjective symptoms prohibit employment. He asserts that he gets frustrated and angry when he struggles to understand something, which happens frequently. Jones says he "swears, yells, and throws things," "is physically aggressive toward people," and "gets mad over things that are not important." [Filing No. 12, at ECF p. 5.] Further, he asserts he struggles with simple tasks, like counting change or doing is laundry, and must be shown several times how to do them. Together, Jones alleges, these prohibit him from working.

### III. Discussion

The Court's review is deferential—it cannot reweigh the evidence or supplant the ALJ's judgment with its own. *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Court reviews ALJs' decisions to ensure they apply the correct legal standard, and their decisions are supported by substantial evidence. *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Summers*, 864 F.3d at 526. It "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

ALJs must consider all relevant evidence in reaching their decisions. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts an ALJ's conclusions, the ALJ must

confront that evidence and explain why it was rejected. *Moore v. Colvin,* 743 F.3d 1118, 1123 (7th Cir. 2014). However, ALJs need not mention every piece of evidence, so long as they build a logical bridge from the evidence to their conclusions. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

When evaluating a claimant's subjective symptoms, ALJs must determine whether the claimant's testimony was credible. SSR 96-7p. ALJs must first look to whether the claimant's severe impairments can reasonably be expected to produce the alleged symptoms. *Id.* If yes, the ALJ must evaluate the record as a whole to determine whether the claimant's allegations are supported, and therefore credible. *Id.* "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (internal quotation marks omitted). Here, the ALJ determined Jones's alleged subjective symptoms could be produced by his severe impairments. However, the ALJ concluded that Jones's claims were not credible.

    **a. Did the ALJ Err as a Matter of Law?**

Jones seems to argue that the ALJ erred as a matter of law by failing to articulate the factors discussed in SSR 96-7p and by not directly connecting the discussion of the evidence to them. Jones makes multiple, repetitive lists of the various factors spread throughout SSR 96-7p and strings three cases together without any discussion: *Steele v. Barnhart*, 290 F.3d 936 (7th Cir. 2002), *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001), and *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429 (3d Cir. 1999). [Filing No. 12, at ECF p. 17–19.]

These cases, however, do not support Jones's position. The ALJ's credibility determination was a single sentence in *Steele*, 290 F.3d at 942. The court held that an ALJ's

4

decision "must contain specific reasons for a credibility finding," and an adequate explanation so "subsequent reviewers will have a fair sense of how the applicant's testimony was weighed." *Id.* (internal quotations omitted). The court did not hold that ALJs must list specific factors from SSR 96-7p and expressly apply them. *See id.* Similarly, in *Zurawski*, 245 F.3d at 887–88, the ALJ's decision was remanded because the ALJ found the claimant was not credible due to "inconsistencies" but neglected to say what the inconsistencies were.[1] The court in *Schaudeck,* 181 F.3d at 433 held "the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence" but did not require ALJs to list and discuss the factors from SSR 96-7p.

Here, the ALJ outlined Jones's claimed symptoms [Filing No. 8-2, at ECF p. 26, R. at 25] and discussed discrepancies between Jones's testimony and other evidence in the record. [Filing No. 8-2, at ECF p. 27–30, R. at 26–29.] As the discussion below more fully illustrates, the ALJ sufficiently discussed the relevant evidence and provided the Court with a fair sense of how he weighed Jones's testimony.

   b. **Evidentiary Support**

Jones next focuses on the adequacy of the ALJ's discussion of the evidence in support of his credibility determination. Jones argues the "ALJ's decision is devoid of the necessary and mandated level of articulation required to show that the reasoning forms 'an accurate and logical bridge between the evidence and the result.'" [Filing No. 12, at ECF p. 19 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).] Jones makes two general arguments and points to

---

[1] *Id.* The *Zurawski* court also noted that the ALJ must consider specific factors "[i]f the allegation of pain is not supported by the objective evidence in the file and the claimant indicates that pain is a significant factor of his or her alleged inability to work." *Id.* at 887 (quoting *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994)). However, Jones does not complain of pain, nor does he not argue that anger is the equivalent of pain.

5

particular factual discussions regarding conflicting evidence. However, his arguments are unpersuasive.

Jones begins by referencing two quotes from the ALJ's decision in a manner that suggests the quotes were near to each other with no analysis between them.[2] A review of the ALJ's decision shows otherwise. In actuality, the two quotes were pages apart with ample relevant analysis between them. Jones's argument is further undermined by his own discussion of the ALJ's factual analyses that were between those quotes. [E.g., Filing No. 12, at ECF p. 19.]

Jones returns to challenging the ALJ's credibility determination with a block quote from *Lechner v. Barnhart*, 321 F.Supp.2d 1015, 1029 (E.D. Wisc. 2004). [Filing No. 12, at ECF p. 23.] Within this quote, the *Lechner* court briefly discussed *Golembiewski v. Barnhart*, 322 F.3d 912, 915–16 (7th Cir. 2003), in which the Seventh Circuit held that a general discussion of the evidence is insufficient to support a credibility determination. In *Golembiewski*, the ALJ predicated the credibility determination on "the reasons set forth in the body of the decision." *Id.* at 915. However, the body of the decision failed to address the claimant's credibility whatsoever. *Id.*

Here, the ALJ references SSR 96-7p nearly verbatim when outlining his responsibility to evaluate Jones's subjective symptoms. *Compare* Filing No. 8-2, at ECF p. 26, R. at 25 *with* SSR 96-7p, 1996 WL 374186, at *2. The ALJ described in great detail the alleged symptoms and compared offered testimony from Jones and Fields with other evidence in the record. [Filing No. 8-2, at ECF p. 26–30, R. at 25–29.] The ALJ discussed Jones's noncompliance with prescribed treatment. [Filing No. 8-2, at ECF p. 27, R. at 26.] Jones's psychiatrist said he had improved

---

[2] "Here, the ALJ stated that [quote #1]. The ALJ *then* stated that [quote #2]." [Filing No. 12, at ECF p. 17 (emphasis added).]

with treatment compliance. [*Id.*] Jones's therapy records showed he was generally polite and answered questions with no difficulty. [*Id.*] Jones had fewer anger issues after leaving his mother's home. [*Id.*] Jones's teachers denied behavior concerns and said he interacted appropriately with peers and teachers. [*Id.*] Jones denied significant comprehension difficulties at his January 2013 psychological evaluation. [*Id.*] Jones had no problem filling out his intake questionnaire and noted he felt his learning disability "was not a problem." [*Id.*] The ALJ's discussion continued, listing many other reasons to discredit Jones's testimony. [Filing No. 8-2, at ECF p. 27–30, R. at 26–29.] Hardly a "general discussion of the evidence," each point undermined Jones's testimony that his anger and learning disability prevented him from working.

Regarding all of the particular factual discussions by the ALJ that Jones challenges, Jones argues that the Commissioner's responding arguments are inappropriate. Specifically, Jones argues that the Commissioner offers prohibited post hoc explanations that "amount to a tacit acknowledgement that the written decision . . . is flawed." [Filing No. 16, at ECF p. 1.] Jones argues the Commissioner's arguments are improper because the ALJ's decision "must stand or fall with the reasons set forth" in the decision. [*Id.* (quoting *Barbato v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996)).]

Jones's argument is unpersuasive. In *Barbato,* 923 F. Supp. at 1276, the issue was whether the ALJ properly rejected a medical source's testimony. The ALJ gave three reasons, but the defendant's briefing included additional arguments that were not offered by the ALJ. *Id.* The *Barbato* court inserted the quoted language in a footnote to summarily deny consideration of those additional arguments. *Id.* at 1276 n.2. Here, the Commissioner does not offer new

7

arguments to support the ALJ's conclusion. Rather, the Commissioner points to other areas of the decision in which the ALJ addressed the evidence Jones asserts the ALJ failed to discuss.

Regarding particular determinations, Jones makes two arguments based on the language of a particular paragraph in the ALJ's decision. The paragraph reads as follows:

> The claimant has a history of counseling and medication for bipolar disorder, but process notes show the claimant was frequently noncompliant with taking medication and attending therapy sessions (Ex. 9F).[3] Notably, while attending therapy, he was generally polite and answered questions with no difficulty. Seemingly, the claimant's anger issues have improved since leaving his mother's home.

[Filing No. 8-2, at ECF p. 27, R. at 26.] Jones takes issue with the language regarding his demeanor and cognition at therapy and his noncompliance with treatment. However, Jones fails to show that the conclusions require remand.

Jones challenges the ALJ's conclusion that the record shows Jones was "generally polite and answered questions with no difficulty." [Filing No. 12, at ECF p. 20 (quoting Filing No. 8-2, at ECF p. 27, R. at 26).] Jones asserts that "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." [Filing No. 12, at ECF p. 20 (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).] However, as the Commissioner correctly responds, that does not mean ALJs are required to find that worse days predominate whenever the record shows a mix of good and bad days. Jones, the ALJ, and the Commissioner each cite evidence from the record to support their respective positions. The Court cannot second-guess the ALJ's determination simply because there are facts to support either conclusion. *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). This is particularly true, here, because the issue is a credibility determination, which the

---

[3] Exhibit 9F is included in the record in Filing Nos. 8-13, 8-14, 8-15.

Court can only overturn if patently wrong. *See Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012).

Jones's second argument based on the above-quoted paragraph is that the ALJ failed to consider contradictory evidence in his analysis of Jones's noncompliance with treatment.[4] Rather than argue he complied, Jones maintains the ALJ failed to address evidence that suggests Jones's noncompliance does not discredit his testimony. This argument is unpersuasive for two reasons. First, though the ALJ discussed Jones's noncompliance, he did not state that he relied on the noncompliance to find Jones's testimony not credible. Rather, he concluded the quoted paragraph by noting that Jones's anger issues had improved. Thus, the cause of the noncompliance is irrelevant. The only relevance of mentioning noncompliance was that since Jones began complying, his symptoms have improved. This apparent improvement made Jones's claims less credible to the ALJ.

Second, even if the ALJ relied in part on Jones's noncompliance to discredit Jones's claims, the ALJ sufficiently discussed the arguably contradictory evidence to which Jones points. Jones points to evidence that he was reliant on his mother, with whom he did not have a good relationship at the time, to drive him to counseling. The ALJ did not note that Jones relied on his mother for rides. However, the ALJ addressed the tumultuous relationship, including Jones's claim he was physically aggressive while living with his mother. [Filing No. 8-2, at ECF 26, R. at 25.] Moreover, the ALJ noted that Jones was less angry after leaving his mother's home. [*Id.* at ECF 27, 28, R. at 26, 27.]

---

[4] ALJs may consider a claimant's noncompliance with treatment as evidence implying the claimant's symptoms are not as bad as alleged. SSR 96-7p.

Jones also asserts that noncompliance was a symptom of his conditions, citing a social worker's notes. [Filing No. 8-14, at ECF p. 9, R. at 752.] However, the social worker did not reach this conclusion. [*Id.*] The Commissioner accurately points out that, though the social worker noted Jones's noncompliance, she did not offer an opinion or conclusion as to the cause. [*Id.*]

Jones contends the ALJ failed to address evidence that Jones did not comply because the medication made him tired. This argument presents a more complicated issue but nonetheless does not require remand. The ALJ did address side effects, noting that Jones "consistently denied side effects from medication and none were reported in the written record." [Filing No. 8-2, at ECF p. 29, R. at 28.] However, this is only half true. Jones does not contest that he consistently denied side effects. But there were two instances where Jones's doctor changed his medication due to tiredness and difficulty waking, respectively.[5] Thus, the ALJ's statement that there were no side effects in Jones's record is a factual error.

However, an ALJ's decision may contain factual errors and still be supported by substantial evidence. *See Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002) (upholding a decision with multiple factual errors because the ALJ's ultimate conclusion was supported by substantial evidence). As noted above, the ALJ discussed ample evidence to support his conclusion regarding Jones's subjective symptoms. Even if Jones's noncompliance did not support the ALJ's credibility determination, the determination is still supported by substantial evidence, and is far from being "patently wrong." Further, tiredness and difficulty waking have little to do with the core symptoms underlying Jones's alleged disability—uncontrolled anger

---

[5] [Filing No. 8-15, at ECF p. 46, R. at 869; Filing No. 8-15, at ECF p. 85, R. at 906.] Jones also cites a third record, but the record is not clear whether the noted "symptom" stemmed from Jones's bipolar disorder or his medication. [Filing No. 8-15, at ECF p. 40, R. at 863.]

and difficulty understanding simple tasks. Ultimately, the error is immaterial to the ALJ's credibility analysis.

Jones next argues that the ALJ erred by failing to address Jones's alleged coping mechanism—walking away. However, any such error was harmless because Jones failed to present credible evidence that he utilized the coping mechanism so extensively that it made him unemployable. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (ALJs need not discuss every piece of evidence); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) (claimants bear the burden of presenting medical evidence to support their claims).

At the hearing, the vocational expert testified that people are not employable if they are off-task more than 15 percent of the day. Jones cites two instances in which his therapist encouraged him to walk away. [Filing No. 8-13, at ECF p. 19, R. at 676; Filing No. 8-14, at ECF p. 21, R. at 764.] However, Jones's brief cites no source suggesting Jones would have to walk away for more than 15 percent of a work day. The only evidence offered to show Jones utilized this mechanism even intermittently was Jones's and Fields's testimony, which the ALJ found not credible.[6] Thus, Jones did not supply credible evidence that he actually would walk away for significant periods at regular intervals. Therefore, the ALJ did not commit reversible error by failing to discuss Jones's alleged coping mechanism.

Finally, Jones argues that the ALJ misinterpreted the evidence regarding the amount of supervision Jones would require on the job. The ALJ noted Jones's improved work with one-on-one attention in his school's resource room and his failure to complete other assignments outside of the classroom. Jones argues this evidence supports a finding that Jones would require so much supervision as to make him unemployable. Even when a person has the skills and ability

---

[6] The ALJ gave "slight weight" to Fields's testimony. [Filing No. 8-2, at ECF p. 30, R. at 29.]

to work, they are still disabled if they can only perform "sheltered employment," i.e. would require supervision every thirty minutes. *Browning v. Colvin*, 766 F.3d 702, 704 (7th Cir. 2014).

Though Jones's use of the resource room may support a finding that Jones would be limited to sheltered employment, the ALJ provided substantial support for the opposite conclusion. The ALJ cited teachers' evaluations, his improvement while living in his girlfriend's home, his denial that his learning disability was a problem, his self-care, his care for his dog, and his positive response to treatment. [Filing No. 8-2, at ECF p. 28–29, R. at 27–28.] Further, the ALJ highlighted that Jones told his examiner he had no interest in working, was not interested in Vocational Rehabilitation Services, and was concerned that he would lose his SSI payments if he had an income. [*Id.*] This evidence is not nullified simply because the ALJ addressed inconsistent evidence. It certainly does not give the Court license to supplant the ALJ's determination. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

### IV. Conclusion

Jones failed to show the ALJ erred as a matter of law in his credibility determination or that it was patently wrong. Therefore, the ALJ's decision should be affirmed, and Jones's brief in support of complaint for review [Filing No. 12] should be denied.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 11/15/2017

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.